Case No. 12-0789, Aaron Ovay v. Sears, Roebuck & Co. Case No. 12-0789, Aaron Ovay v. Sears, Roebuck & Co. Case No. 12-0789, Aaron Ovay v. Sears, Roebuck & Co.  Good morning, your honors. My name is Frank Satira, and I'm here on behalf of Sears, the appellant in this matter. All right, counsel, can you keep your voices up for us and spell your last name for me? It's C-I-T-E-R-A. And I'm sorry, I didn't, yeah. My name is Ben Barno. I have my colleagues with me here, Mr. Hart and Ms. Harris, and we're here on behalf of the police. All right, and if you'd just spell your last name for me. Yes, certainly. B-A-R-N-O-W. First name is Ben, B-E-N. Thank you. Thank you all. All right, Mr. Satira, you can proceed, sir. Thank you, your honors. May it please the Court, again, for the record, my name is Frank Satira, and I'm here on behalf of Sears, the appellant in this matter. Counsel, before you start, I have one question. Sure. All right. What standard of review should we, this Court, apply to this case? You should certainly apply the de novo standard, your honor. I think it's very clear from the case law for two reasons. One was there were no factual findings in the trial court below. The record was essentially facts that were undisputed. Moreover, in the Rosen case, which your colleague Justice Hall was part of the panel, in Rosen the Court concluded that in interpreting a contract, an arbitration provision, the standard is de novo. So I know there was an issue in the briefs, but it's certainly, in our view, clearly a de novo standard. The circuit court committed error when it held that Sears had waived its right to compel the arbitration of plaintiffs' individual claims. As is clear from a long line of precedent, both in Illinois as well as at the federal level, courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms. Now, the contract here between Sears and each of the individual plaintiffs contained an arbitration clause. And that arbitration clause made very clear that arbitration could be selected at any time up until judgment unless the party rejecting arbitration was able to demonstrate substantial prejudice. That's the terms of the contract between Sears and each of the individual plaintiffs. Under the Federal Arbitration Act, parties cannot avoid their agreements to arbitrate based on waiver, which is the issue we have before us, unless they establish three things. First, knowledge of an existing right to compel arbitration. Two, acts inconsistent with an existing right. And three, prejudice to the party opposing arbitration resulting from those inconsistent acts. Waiver of the contractual right to arbitration is strongly disfavored under the Federal Arbitration Act. Thus, any party that comes before the court arguing waiver of arbitration bears a heavy burden of proof. And I would submit to the court that plaintiffs in the court below failed to carry that burden. The right to arbitrate under the FAA is not waived by litigation conduct that precedes an intervening change of law. And any doubts regarding waiver or delay should be resolved in favor of arbitration. What the court below failed to recognize was that the United States Supreme Court decision in Concepcion was an intervening change in law. And in order to understand that intervening change of law, you have to put the arbitration agreement in the context of both Arizona law and Arizona law, which looks to California law in the absence of Arizona law. Which cases in Arizona law? Well, Arizona in the Cooper case, which was a Federal District Court case in Arizona, which was decided in 2007, adopted the Zatella decision, which was the California 2002 decision, and the Discover Bank decision, which was the California Supreme Court 2005 decision. So at the time these actions were commenced, which was in 2002 and 2003, the California Appellate Court in Zatella had clearly expressed the view that a class arbitration waiver was unenforceable. And in fact, in Zatella, the court severed the class arbitration provision and left plaintiffs to pursue class-wide arbitration. But are there any Arizona cases on point? Not adopting California law, but on point with regards to this issue? Well, certainly the Cooper decision. But again, Cooper is an Arizona District Court looking at how Arizona law would rule. But Cooper explicitly accepted both Zatella and Discover Bank. So Arizona, like several Western states, looked to California law to determine how the courts would likely rule. And in this instance, it was very clear, certainly under California law, that class action waivers were unenforceable. Certainly beginning in 2002 with Zatella and then carrying through with Discover Bank, which was the California Supreme Court decision in 2005. And then ultimately Cooper in 2007, and then Concepcion, of course, changes everything with respect to class arbitration waivers. So at the time, these plaintiffs commenced their action and chose not to elect arbitration, which was certainly their right at the outset of the case. It was clear that if the court were to apply Arizona law, that Arizona courts would look to California. And the risk, the very real risk to Sears was that the class action waiver would be severed and Sears would be faced with the prospect of class arbitration, which the Supreme Court and Concepcion set forth a variety of reasons why class arbitration, unless the parties contract for class arbitration, is inconsistent with the Federal Arbitration Act. And you can certainly look to the Concepcion decision for a list of those reasons. But among the reasons certainly are the complexity of the procedure and the lack of any type of review. So when... I'm sorry to interrupt you, but are you saying that the Ninth Circuit then was holding that you could not proceed with arbitration until the decision in Concepcion? Well, the Ninth Circuit was following the Discover Bank rule, which was that the class action waiver was unenforceable under certain circumstances that were set forth in Discover Bank, including the fact that it was a contract of adhesion, that the case involved small amounts of money, and that the plaintiffs alleged that there was essentially a scheme to defraud plaintiffs of that money. So that's the case. That's essentially the Discover Bank rule, which the Ninth Circuit had adopted and then was rejected by the U.S. Supreme Court and Concepcion. After Concepcion, in 2011, shortly after Concepcion was decided, Sears served on plaintiffs a demand for arbitration. That demand was rejected by the U.S. Supreme Court, and the motion to compel arbitration in the circuit court, that motion was denied. Interestingly, the circuit court judge, Judge Billick, concluded that the provision was not unconscionable, but nevertheless concluded that Sears had waived its right to seek arbitration based on its post-litigation conduct. The error that the court committed was to focus on the period of time prior to Concepcion as opposed to that short period of time after Concepcion, and I believe plaintiffs concede that if we were to look at the period post-Concepcion, there's certainly no prejudice. So what the circuit court did was fail to recognize that Concepcion was an intervening change of law, and as a result, decided to look at that time period and concluded, on a very thin factual record, that there had been prejudice to the plaintiffs for Sears's delay in seeking arbitration. I have a question. How do you reconcile that court's decision, in this case with Hutcherson v. Sears-Roback? I mean, that was a request from the plaintiffs to this Court, and that was prior to Concepcion. Sure. Hutcherson, which was a 2003 decision of this Court, although what Hutcherson did was said there is no Arizona law, as Your Honor pointed out in your prior questions, and decided to not look to California law, which is what the Arizona jurisprudence suggests that it should do, but did a survey of the variety of state laws, and then simply chose to follow one path. Rosen, which followed shortly on the heels of Hutcherson, did a similar thing, and simply followed Hutcherson. What's interesting about Hutcherson and Rosen is that both of those decisions said that in order to demonstrate unconscionability, you have to demonstrate both procedural and substantive unconscionability. And I think that's a very important point. Unconscionability. And that view was subsequently rejected both by Kinkle and by Razor v. Hyundai Motor. So I think the state of the law in Illinois was certainly very unclear. Moreover, and certainly with all due respect to this Court, what Hutcherson failed to do was to follow California law, which by the time I was there, I had heard from Zatella that California law, in fact, would determine that the class arbitration provision was unenforceable. Well, let me stop you for a moment. Hutcherson is not the same issue that's before the Court here. It's a totally different issue. Well, you're correct, Your Honor, in several respects, one of which is that in looking at waiver, you have to look at the facts of this case, not the conduct in other cases such as Hutcherson. Otherwise, we'd be faced with the prospect of trying. I mean, Hutcherson was an amendment to Sears Credit Card Agreement adding the arbitration clause. That's not the facts here. That's correct, Your Honor. And the law in California under the California Arbitration Act, is that a similar act to our act? The California Arbitration Act? I'm not sure, Your Honor. I think both Zatella... I mean, California, you know, is a statutory state. Right, but both... It's the only statutory state in the Union. But both Zatella and Discover Bank follow the Federal Act as opposed to any state arbitration. I mean, what's the best case that you have for your position? Well, Concepcion, obviously, is the ultimate game changer in terms of whether class action arbitration provisions are enforceable absent the party's agreement to agree to class arbitration. If Your Honor is focused on... Is that the issue here? Well, the issue here, I believe the sole issue here, is whether Sears waived its right to seek arbitration. Right, the cases you're talking about, they have nothing to do with waiver. Correct. Waiver is waiver. Right, but if you were to look at, for example, the Valentine decision, which was decided by your brethren down the street at the district court, the Valentine decision, for example, was faced with similar facts, where there was a delay in seeking arbitration, and then the northern district recognized that Concepcion was an intervening change in the law, and allowed the defendant to compel arbitration after some period of time. I mean, after Concepcion came Gutierrez v. Wells Fargo. Didn't they reject the same argument there? I'm not aware of that decision, Your Honor. Okay. And that was a Ninth Circuit case. I have a question with regards to the Ackerberg case that you cited in your briefs, v. Johnson. Is that still good law? It's 892 Fed 2nd. You cited it for a proposition saying, especially in cases in which any delay in making a motion to compel arbitration is based on unfavorable or uncertain law, waivers should not be found. Yeah, it is, Your Honor. And, in fact, what we would do here is also look to the terms of this particular agreement, which, as I said, the terms are very clear under the credit card agreement, which can be found at Appendix 31, beginning on Appendix 31. But that agreement provides that arbitration can be selected at any time up until a judgment, unless the party rejecting arbitration, as I indicated earlier, demonstrates substantial prejudice. Now, that's an Eighth Circuit case. So how do you reconcile that with the Ninth Circuit cases, then, that you've been citing as your supporting proposition? Well, the Ninth Circuit cases predating Concepcion are now not good law, nor is, obviously, Discover Bank and Zatella. So I think you have to look at the decisional law both pre-Concepcion and post-Concepcion. You know, for example, the Illinois Supreme Court's decision in Kinkle, which found under very specific facts that the arbitration clause was unenforceable and, in fact, indicated that it was making no judgment as to Hutchison or Rosen, it's a question at this point whether Kinkle, or at least some of the underpinnings of Kinkle, are still good law. In fact, in Kinkle, the Illinois Supreme Court had commented that the United States Supreme Court had concluded that class arbitration was, in fact, consistent with the FAA. Well, I think after Concepcion, that's not an accurate statement anymore. But, I mean, clearly, Concepcion leaves open the possibility that under Section 2 of the FAA that an arbitration provision can be found to be unconscionable. What changes under Concepcion is that you either throw out the entire arbitration, or arbitration provision, but you cannot force a party to class-wide arbitration absent an agreement for class-wide arbitration. So that's really the significant change, is that you certainly have the ability, and, in fact, Judge Billick in the court below did find that the provision was not unconscionable. The difference with Concepcion is it takes away the risk of being forced into class-wide arbitration contrary to the terms of the agreement. And that was the risk that Sears faced prior to Concepcion based on the Discover Bank rule, which was subsequently followed by Cooper in the district court in Arizona. I know we've been here a lot. I appreciate it, and unless there's any questions, I will sit down. Thank you. May it please the Court, good morning. Good morning. Ben Barn on behalf of the police. Counsel, before you proceed, I'd like to ask the same question with regards to the standard of review. What standard of review should this Court consider in this case? On the portion I believe is before this Court, the abuse of discretion under the Rosen case, it's whole cloth to me, at least the way I read it, to say that Judge Billick did not make findings. He most certainly did, and the order that he entered deals solely with the waiver issue, and that waiver issue is based upon the delay, the conscious decisions, the evaluation of the conduct of Sears over the long period of time that the trial court handled this case. Now, with regard to if one got into whether or not the arbitration contract, a contract is operative, et cetera, that would be a de novo review. What we respectfully suggest is the essence of this is the waiver. What I find interesting is how Sears, if they could put these products in their stores, their business would turn around. They seem to be relying upon a time machine because they move away from what they should have done and, in fact, what they did do over a long period of time, and they fast forward into the future with perception. Let me ask you this question. Sure. You know, I hear a lot of arguments, cases and things that, to me, have no relationship to anything. Sears' argument is that they did not act inconsistently with the non-existing right to compel arbitration. Isn't that what they're claiming? I say that's true in my summary reference without getting into cases. Well, okay, so show me how or show us how they did act inconsistently. Thank you. First of all, they hit three for three. Hutchison, they raised the issue. They won. Vigil? No, in this set of facts, you know, you could take a case, and those cases have nothing to do with this pen that I have here. Well, they don't. Show me how they acted inconsistently. Okay. The arbitration clause that was operative in each of the cases I'm about to reference was the same one that they assert here from 203, so that is that similarity. They moved on the very same clause. They are telling this Court that they just didn't think they had a chance of getting enforced. In fact, they not only had a chance, three for three, pretty good odds, on the same basic clause. It's the same pen, Your Honor. They did that. Importantly, they did that how many times? At least three that I know of. Goodness only knows how many times they, you know, but for better phraseology, blew people off. On the record in this case, how many cases did they act?  Hutchison, Vigil. Two or was it three? I believe it's three because we also have Ruhl versus Sears. In Mississippi, you have Vigil. Ruhl was not a class action, but it still enforced the arbitration. Hutchison, Vigil. Hutchison's, Illinois, Vigil. I'm looking for the state here. I apologize. I believe that was the Mississippi one, and then Ruhl. Ruhl was Mississippi, so in those cases, Your Honors, more than one. Three. Three for three, and I think it's in the briefs and it's pretty clear. There's something else they did, Your Honor. There's over 40 million people involved in this class action. California's out. There was a settlement. California went ahead. That took 4 million people out. But in every instance where Sears says they put this arbitration clause, they told something to people, not once, not twice, but over 40 million times, and they said they have an arbitration agreement, and they told those people it was unenforceable. The opposite of that is untenable because what they would otherwise say, based on what they're saying here today, is they told over 40 million people, a big percentage of this country, that what they were telling them wasn't true. Now, they believed it was true because they went ahead and used it. Why did they use it in this case? Well, they didn't. They made, and I heard the argument before this, they made a litigation decision. But when they rely upon Concepcion or the Discovery Bank Rule, they go to a period of time where they've already spent, at a minimum, six years of litigation, motions to dismiss, three mediations, a full evidentiary hearing to enforce a settlement agreement. They want part of their motion to dismiss. They want to give that up. I don't think so, and I don't need it up because I have a lot left. They file a motion, a cross motion for summary judgment. They participate in the preparation. They commented on the notice that went out and was published at great expense. They took the depositions of each plaintiff. One plaintiff came from Kentucky. One came here after he was training horses in his bib overalls and sat in a room with no air conditioning that day, and that's not in the record, but it's a fact. They expended their duties as appointed class reps. That was heavily contested. Class cert was heavily contested. This wasn't a lay down. You can see what they filed. They fought hard. That class certification process was intense, and it was immense. And at the end of it, these plaintiffs got to be appointed as class representatives. That brings a duty. They discharged that duty for multi-years, multi-years. Sears says they're not prejudiced. I think they're prejudiced, and there's something else, and I'm not saying these people are looking for this, but the law provides an incentive award for people that stand up as consumer advocates for the rights of other people in this country, and that's the best entitlement they have at the end of this court case for a court to decide. Now, here we are on the verge of a motion for summary judgment, which I think is going to be granted, but even if it isn't, on liability. One way or another we're on the verge of trial. After all these opportunities, all these rulings, all the things that Sears sought, and all the things that they not only could have done but did do in multiple courts, here comes another case that they say is a change in the law. Well, it's not just any change. It has to be so significant as to make what they would have otherwise done futile, and that is not this case. Not even close. Here's why. First of all, they overstate Concepcion. Concepcion is real clear. All you've got to do is look at the last paragraph from Justice Scalia. He says they overrule that Ninth Circuit Discover Bank Rule. They never took away the case-by-case analysis. It's a concurring opinion with Justice Thomas, and when you put those together to get the five out of four, what it says is you do a case-by-case. That's what Illinois has always said. Yes, there's a variation on a theme that comes in later, whether it's and and or for substantive prejudice or procedural prejudice, but that's what Illinois has always done. That's what Arizona was doing. And until you had this, I guess, quote, harsh rule, Discover Bank, that's what they could have availed themselves on and did and won. Now, the other thing that I think is very important is when you read Concepcion, that is one heck of an arbitration clause. Even the California courts, or let me rephrase that, the California courts said, hey, the plaintiffs are better off with it. If Sears doesn't give them or, excuse me, AT&T doesn't give them enough, they get 75. Sears doesn't better their demand. They get $7,500 and double their legal fees. That was integral in the Supreme Court's comment and review. Now, what the Supreme Court did say was you can't give special rules to an arbitration agreement. It has to be treated like other contracts. Exactly. Exactly. Okay. And that's why we have the case-by-case analysis, which existed in Illinois, which exists in Illinois. You know, while I think it was only a commentary and not a finding or ruling from Judge Billick, and he said so himself and his actual order doesn't contain it, it's really interesting that Sears wants to stand on the proposition that their contract is enforceable. Okay. Then why didn't you move on it? Well, guess what? They did. And they won every single time. When they leave off that it has to be so significant, they leave off that they won every time. It can't be any change. Okay. So the Supreme Court said that you can't have a rule that automatically throws out the arbitration clause, excuse me, the class action bar, and then somebody has to go in and defend with the class action. Okay. That doesn't affect them here. There's still a case-by-case analysis if you get that far. But the essence of this case is one thing, waiver. Everything they talk about is conceptual and conceptual. They don't excuse what they did before that except to say something that just can't be taken as true, that they didn't have a chance. They had every chance. And they won every chance. Frankly, to me, it's staggering that we're here. I think it's a Hail Mary. I think after 12 years, they're coming up to a trial, I guess, at least on damages, maybe on liability and damages. And lo and behold, something came along that has nothing to do with where they are or what they have done. And they try to refocus everything, wipe the slate clean as to what they did, pretend these other cases are different when it utilizes the same arbitration clause for all practical purposes that they want to put in here. I have a question in regards to the agreements here. You argue in your briefs that the seers shouldn't rely on the 2003 agreement. My view is the class period was from about 1995 to 2001, I think it was. And they want to come in afterwards and say, well, now we have this new arbitration clause here. Whether it's in or out, their best argument is that it's in. I'm saying even if it is in, they had plenty of opportunity to work on it and it's all a whole plot. My view is it shouldn't be in because it's a men-to-hold argument, which they dispute whether or not it's not the clearest argument in the universe. But they come in after the fact and they want to change it. There's an issue as to whether or not in the earlier one where NAF is no longer in business, was it integral to the contract or not? We say it was. We say it's a game-changer in that degree. But in terms of the waiver, those are all realistically alternative arguments. The waiver is overwhelming. They're telling you that they didn't know if this would be enforceable. That's why they didn't take any action. For goodness sake, what did they tell the courts they went in front of? Did they put in front of them, you know what, we're here, but it's not enforceable. I mean, it's a whole plot. Or what did they tell the 40-some million people, that we're coming to something that's not true? Sears, the storefront of America, that would do a lot of goodwill for them. So, you know, other than that, they rely upon Concepcion. It's after the fact. The horses are long gone. They're in pasture off the racetrack. And they mistake Concepcion. Concepcion, there's no question Concepcion made a change in how you interpret a portion of the Arbitration Act. But no way was it a ground-up, chase-out, case-by-case rule that doesn't exist. It says look at it case-by-case and look at all the facts. It also deals with an arbitration situation where the evidence is far different than here. If we wanted to go there, we don't have to because they waived it. But just briefly and parenthetically and for further flavor, Sears has the person pay the arbitration fee. Maybe he'll get it back. Sears has you exposed for legal fees. AT&T, my goodness, it's a great clause. Great clause. That was also integral to what the Supreme Court said. The Supreme Court said you've got to look at everything. You just can't say, oh, it's arbitration. You know, here in California, we don't like that. You can't do that because of the public policy. But nobody ever took away the basic underlying public policy of contracts cannot be unconscionable, they can't be brought about by duress. Nobody. Justice Scalia hits it on the head. Justice Thomas hits it on the head. And they make a 5-4 on that principle. Nobody ever said that somebody can sit on something all these years and suddenly come back and scrape into bad conduct under the rug and pretend because they're ruling on something that was not significant on the conduct that is before this Court. It's excusatory. It's wrong. To me, it's less than a Hail Mary. In regards to the 2000 agreement, is the NAF enforceable for them? No, you can't go in front of them. They did some stuff I guess would best be described as not acceptable. And there was a consent decree with the state of Minnesota that they could no longer do that kind of stuff. They're long gone in that area. And I haven't seen them come back would be my statement. But as I read these briefs from other situations, I just don't see them around. I see other organizations, JAMS, AAA, et cetera. But I think my view is they're gone and, in fact, they've changed later. But the waiver is just literally staggering to me. Counsel never said that the intervening change has to be so significant. I mean, that's a major drop. You can't cut the sentence off because you don't like where the leg's taken. Well, that leg walks all over their case. It's not so significant. You know, they had winners. They knew they had winners. They utilized the court at great expense. Goodness, even their own arbitration clause says, well, you can start the arbitration at any time, not when it causes prejudice to the other side. They think people coming up here, being a consumer advocate for 12 years, try and find people like that today. Spend their money for travel, sit in hotels or not, or drive back or fly here and there, or come after they had a hard day's work. No, sir. That is an inconvenience. Maybe not like some of us sitting in an office, but it's an inconvenience. The risk, the risk of putting your name on a pleading, publicize a class notice, when all across the world things that happen with notices today, to read it, to follow the pleadings, to do discovery, to sit for your deposition. And now it's like, you know what, we're going to go to a place where you can't have discovery. And all that stuff you got against Sears, all those maybe admissions, maybe denials, all those judgments, all those rulings, forget it because we're going to walk into arbitration and start over because it didn't work for us over there. We lost too much. And we got a hot idea that has nothing to do with where we are or what we've done. Sears waived it. To me, it's as clear as day. It's raining today, but still clear enough. I don't know what else they could have done. I'm sorry. I think we got it. And with that, I thank you. Okay. If there's any other questions. Thank you. Thank you. Thank you. A minute, counsel. Sure. Very quickly, the futility burden, which is what plaintiffs have suggested both at argument today and in their brief, is frankly not found in Illinois law. The sole decision they cite for this futility burden is the Claren decision, which was an Illinois Supreme Court decision in which the court held that there's no need to object at trial when it's apparent that an objection would be futile. That finds no connection to the case before us and certainly no connection to the waiver issue before the court. It's only the guaranteed success, not the futility of a preconception motion, that would possibly evidence Sears' preconception knowledge of a right to individually arbitrate plaintiffs' claims. With respect to the other three cases, we've talked about Hutchison a great deal. Rule, which was a Southern District of Mississippi decision, was an individual arbitration. The class action waiver was not at issue, so it has no bearing on today. And then Vigil, which was a Louisiana Federal District Court case, again, rather than following Arizona or California law, looked to a decision in the Northern District of Texas and concluded that the waiver was not unconscionable. So I think clearly Concepcion is a game changer. It did change the law, and at the time these actions were commenced, you'd look to Zatella and Discover Bank to determine whether, in fact, Sears was likely to face the risk of class arbitration. Thank you, Your Honor. Thank you. Thank you, and we'll certainly take the case under advisement. Thank you.